Loibl vs. Breidenbach.

Loibl, Respondent, vs. Breidenbach, Appellant.

*October 18 — November 5, 1890.*

*Libel: Publication: Variance: Intent: Admission.*

1. In an action for libel where one publication only is alleged and that is denied, if the plaintiff fails to prove the particular publication alleged he must fail in the action unless the complaint is amended so as to allow proof of a different publication.

2. One who negligently signs a libelous article without knowing its contents, and delivers it to the person who wrote it without any direction restricting the use to be made of it, is responsible for the publication thereof by the person to whom it is so delivered, where the article shows on its face that it is intended for publication.

3. A "retraction" to the effect that the defendant, after ascertaining the facts, withdraws his statement previously published, is *held* to be a substantial admission that he intended to publish such previous statement.

APPEAL from the Circuit Court for *Waukesha* County.

The following statement of the case was prepared by Mr. Justice Taylor as a part of the opinion:

This action was brought by the respondent to recover damages of the appellant for publishing a libel against him in the Eagle News, a weekly newspaper, printed and published in the town of Eagle. The facts in regard to this case are substantially as follows:

The plaintiff and defendant were members of the same Catholic church in said town. The plaintiff had been secretary of said church previous to November 2, 1888, and on that day had settled his business as such secretary with the defendant, who had been elected secretary of said church in his place, and on such settlement the said defendant and Anton Steinhoff gave to said plaintiff the following written statement as to such settlement, to wit:

" St. Theresa's Church, Eagle, November 2, 1888.

"This certifies that Daniel Clohisy and *Henry M. Loibl,* treasurer and secretary respectively, have faithfully dis-

Loibl vs. Breidenbach.

charged the duties pertaining to their offices, and have rendered a just and true account of all moneys received by them as such officers, in the name of and for the congregation, and delivered the same to their successors.

"FREDERICK BREIDENBACH, Sec.

"ANTON STEINHOFF, Treas."

It appears that plaintiff had also been the town clerk of the town of Eagle from April, 1888, to April, 1889, and at the town meeting in April, 1889, he was again a candidate for said office; and the plaintiff alleges that at the April, 1889, election it was reported in said town that he had, while secretary of said church, stolen church money. And on the 10th of April, 1889, for the purpose of contradicting said report, he published in the said Eagle News the receipt, a copy of which is above given. On the 17th of April, 1889, in the next issue of the Eagle News, a protest purporting to be signed by the defendant and the said Steinhoff was published, of which the following is a copy:

"PROTEST.

"We, the undersigned committee of St. Theresa's Church, Eagle, Wis., do hereby earnestly remonstrate against an article published in the News of last week. We pronounce the whole article a base fabrication, and the signatures attached thereto a forgery.      FREDERICK BREIDENBACH.

"ANTON STEINHOFF."

On the 15th of May, 1889, the following retraction was published in the Eagle News, to wit:

"RETRACTION.

"The undersigned, after ascertaining that they had signed a paper on November 2d, 1888, as published in the News, April 10, 1889, believing, however, that they had only signed an ordinary receipt for money received, do hereby withdraw their protest in the News of April 17th, 1889.      FRED. BREIDENBACH.

"ANTON STEINHOFF."

Loibl vs. Breidenbach.

This action was commenced on the 25th day of April, 1889, by service of a copy of the summons and complaint upon the defendants personally. On the trial of the action, the defendant Steinhoff was discharged, as there was no evidence showing that he either signed the libel or authorized it to be signed or to be published. As to the appellant, the evidence shows that he signed his own name to the article published on the 17th of April, as well as the name of Steinhoff. Its actual publication in the Eagle News was fully established by the evidence. The only defense attempted to be made by the defendant was that he signed the libelous writing not knowing what it was, and that he never authorized its publication in the Eagle News.

[There was a verdict in favor of the plaintiff and against the defendant *Breidenbach*, assessing the plaintiff's damages at $275; and from the judgment thereon the said defendant appealed.]

For the appellant there was a brief by *Ryan & Merton*, and oral argument by *E. Merton*. They contended, *inter alia*, that the proof should have been confined to the allegation of the complaint which charges publication in the Eagle News, no publication by delivering or returning the libel to the pastor of the church being alleged. *Sword v. Martin*, 23 Ill. App. 304; *Payson v. Macomber*, 3 Allen, 69; *Barrows v. Carpenter*, 11 Cush. 456. To constitute a publication such as will render the publisher liable to an action, the publication must be knowingly, and the publisher must be conscious of its contents. *Layton v. Harris*, 3 Harr. (Del.), 406; *Viele v. Gray*, 10 Abb. Pr. 12; *Maloney v. Bartley*, 3 Campb. 213; *Weir v. Hoss*, 6 Ala. 881; Holt, Libel, 290; *Rex v. Abingdon*, 1 Esp. Cas. 228; George, Libel, 107.

*C. E. Armin*, for the respondent.

TAYLOR, J. It was not insisted upon this appeal that there is not sufficient evidence in the case to sustain the

Loibl vs. Breidenbach.

verdict, but it is insisted that the learned circuit judge erred in his instructions to the jury, and in refusing to give an instruction asked by the defendant.

It is urged by the learned counsel for the defendant that as the plaintiff in his complaint had alleged that the libelous article was published in a certain newspaper, naming the same, and there being no allegation of any other publication, it was incumbent on the plaintiff (such publication having been denied by the defendant) to prove the particular publication alleged in the complaint, and that he could not recover upon proof of another and different publication, at least that he could not recover without first having amended his complaint in that respect. We think the learned counsel is correct in his contention upon this point. The plaintiff having alleged in his complaint no publication of the libel except a particular one, and the defendant having denied such particular publication, it seems to us he has denied the substantial allegation in the complaint; and, if the plaintiff fails to prove the publication alleged, he must fail in his action unless he amends his complaint so as to allow proof of a different publication. This is the rule as laid down in the following cases, and we find no other cases which state a different rule: *Perry v. Porter*, 124 Mass. 338; *Chapin v. White*, 102 Mass. 139; *Downs v. Hawley*, 112 Mass. 237. The cases of *Goodrich v. Warner*, 21 Conn. 432, 443, and *Richardson v. Hopkins*, 7 Blackf. 116, are not in conflict with the rule stated in the Massachusetts cases. In these cases, the allegation being that the words were publicly spoken to a particular person, but in the presence and hearing of divers other persons, it was held that the plaintiff might show that the words were spoken to other persons when the person named in the complaint was not present.

Upon the record in this case we cannot find anything which shows that the learned circuit judge did not under-

stand the law applicable to the case as it is understood by the learned counsel for the appellant, upon the question of publication. The learned circuit judge evidently understood that, upon the whole evidence, the defendant must be held to have authorized the publication in the Eagle News, admitting that he did not personally deliver it to the editor of that paper for publication. The only instruction asked by the learned counsel for the appellant was as follows: "If you find from the evidence in this case that the defendant signed the paper in question [designated 'protest'] under the firm belief that it was a receipt or paper belonging or appertaining to church matters, and delivered the same to the pastor of his church, and the pastor published the same in a newspaper, without authority from the defendant, or without defendant's knowledge or consent, and the defendant never ratified the same, then and in that case your verdict must be in favor of the defendant." This was refused by the court, and the defendant duly excepted.

The court was undoubtedly right in refusing this instruction. The defendant by this instruction asked the court to excuse him for signing this libelous article, because, he says, he carelessly and negligently and without any reasonable excuse therefor signed this paper in ignorance of its contents, and delivered it to the man who wrote it, without any direction in regard to what should or should not be done with the same. This ignorance of the contents of the paper signed by him cannot be a justification for signing the same. He was not in any way imposed upon by the writer of it. The defendant does not say that the writer of the article informed him that it was a receipt or paper relating to church matters, or that it was anything in fact except what it purported to be on its face. By signing the same, therefore, without making inquiry as to its contents, or without reading the same, or having it read to him if he could not in fact read it himself, be became equally lia-

ble for its contents as though he wrote it himself and fully understood its contents. If he did not know its contents, it was his own folly and neglect, not the fraud of any other person. *Fuller v. Madison M. Ins. Co.* 36 Wis. 599, 603; *Sanger v. Dun*, 47 Wis. 615; *Tisher v. Beckwith*, 30 Wis. 55.

It is true that the court instructed the jury that the only question for them to determine was the amount of damages. He, in fact, said that the article was libelous, and that the defendant had published the same; and it is this part of the charge the learned counsel for the appellant now excepts to, and insists that whether the defendant published or caused the same to be published in the Eagle News was a question of fact for the jury, not of law for the court. The language used by the circuit judge is as follows: " The publishing or printing or writing of the words is actionable *per se*, and as there is no dispute in this case that *Mr. Breidenbach* signed this paper called a ' protest,' which contained this charge of forgery, and let it go out of his possession, if it is published, in the law he is liable." In another place, in speaking of the damages the jury should assess, he instructs them that the evidence in the case does not show any malice on the part of the defendant, and they should assess only actual damages. " In fixing the amount of damages, you are to take into consideration — must take into consideration — the circumstances under which the article was published; whether the man really knew what he was signing. It don't excuse him, understand. He must pay some damages. He has given it to the public."

The learned circuit judge was evidently of the opinion that the defendant was responsible for the publication in the Eagle News, although he may not have actually directed it to be published in said paper, or have been present when it was delivered to the editor of said paper for publication. After a careful consideration of the evidence in the case, we think there can be scarcely a doubt as to

Loibl vs. Breidenbach.

the correctness of such conclusion on the part of the judge.
The defendant being in law chargeable with knowledge of
the contents of the article, if, after having signed the same,
he delivered it to a third person without in any way re-
stricting the use to which it should be put by such third
person, he must be held to have intended such use to be
made of it as its contents would indicate was to be made
of it; and, as it was on its face intended to contradict an
article which had just been published in said newspaper, it
would be the natural course to publish it in said paper, and
the defendant would be responsible for such natural and
reasonable use of the same, whether he intended it or not.
After the person to whom it was delivered has used it in
the way it would appear upon its face it was intended to be
used, it is too late for the defendant to say that he did not
intend such use to be made of it.

But, independent of the considerations above stated, it
seems to us, that, upon the whole evidence in the case, there
can be no reasonable doubt but that the defendant intended
the publication of the article in the Eagle News, and the
paper which is called the "retraction" is a substantial ad-
mission of its intended publication by the defendant.   The
retraction says, in substance, to the plaintiff that they in-
tended to deny that they had ever signed such a paper as
was published by the plaintiff, because at the time they
signed such denial they did not believe they had signed it,
but having since become convinced that they did sign it,
they withdraw their denial of it.   There is nothing in this
so-called "retraction" which indicates that the defendant
had signed said denial without any knowledge of what he
was signing, or that he did not understand that his denial
was to be published, or that it was in fact published with-
out his knowledge and against his wish.   It appears to us
that this so-called "retraction" is wholly inconsistent with
the claim of the defendant, made on the trial, that he had
no knowledge of what the contents of the paper called the

"protest" were at the time it was signed and published, but is rather an admission that he knew the contents, and that the same was to be published, and that it was intended to make the charge contained in the protest publicly, because at the time he believed it to be true. And this is the reasonable interpretation to be put upon the conduct of the defendant in this matter. But as he made publicly a damaging charge against the character of the plaintiff, because he did not remember accurately what in fact took place when he settled with the plaintiff in regard to his official acts as clerk of the church, he cannot plead his want of memory as a complete justification of his unlawful act, but must make such compensation in damages as are reasonable and just. The damages assessed are not large; and no mere technical error, if there be any in the case, ought to reverse a judgment which is fully and amply sustained by the whole evidence in the case.

*By the Court.*— The judgment of the circuit court is affirmed.