## YOUNGQUIST et al, Respondents, v. AMERICAN RAILWAY EXPRESS COMPANY, Appellant.

### (206 N. W. 576.)

(File No. 5686.    Opinion filed February 8, 1926.)

1. **Partnership—Statutes—Failure to File Names of Partnership With Fictitious Name Does Not Render Its Tttransactions Void.**

   Under Rev. Code 1919, Sec. 1336, relative to effect of failure to file names of members of partnership operating under fictitious name, as required by Sec. 1334, contracts and transactions by such partnership are not rendered void; only remedy thereon being affected.

2. **Partnership—Statutes—Actions—Damages—Statute Prohibiting Action on Contract by Partnership with Fictitious Name Held Not to Prohibit Tort Actions.**

   Inhibition of Rev. Code 1919, Sec. 1336, providing that, where names of members of partnership operating under fictitious name are not filed, it cannot maintain action on any contract or transaction, will not be extended to include tort actions, since courts will not enlarge inhibition of statute in derogation of common-law rights to defeat remedy to which party otherwise would be entitled.

3. **Appeal and Error—Trial—Findings—Appeal and Error—Presumptions—Where Trial Was to Court Without Jury, Objectionable Evidence Deemed Disregarded.**

   Where case is tried to court without jury, and there is sufficient evidence remaining to support findings after eliminating all objectionable evidence, judgment will not be reversed on appeal; presumption being that court disregarded objectionable evidence.

4. **Libel and Slander—Evidence—Composing of Telegram and Delivery to Telegraph Company Held Sufficient Publication.**

   Composing of telegram and delivery thereof to telegraph company for transmission is sufficient publication to render composer liable for libel.

5. **Libel and Slander—Evidence—Telegram Between Two Agents of Defendant Held "Publication of Libel."**

   Where shipment of horses carried by defendant was examined en route, and no symptoms of tuberculosis were found, act of defendant's agent in sending telegram to agent at destination, saying four horses had tuberculosis, constituted "publication of libel," since reducing libelous matter to writing and delivering it to any one other than person injuriously affected thereby is publication of libel.

6.  **Libel and Slander—Privileged Communication—Claim of Privilege in Sending of Telegram Lost by Inclusion of False Statement Therein.**

     Communication between carrier's agents relative to inspection of shipment of plaintiffs' horses was privileged wthin limits of requirements of case, but claim of privilege was lost when false and unnecessary statements that horses had contracted tuberculosis and were not in sound health when shipped, were included.

7.  **Libel and Slander—Damages—Reduction in Profits on Shipment of Horses by Reason of Libel Held Injury in Occupation.**

     Where shippers' profits on shipment of horses were reduced by libelous telegram of carrier's agents, shippers held injured in their occupation within statute defining libel; such definition not referring exclusively to permanent or continuing injury.

8.  **Libel and Slander—Damages—Damage from Temporary Injury to Shipper's Business Properly Pleaded in Action for Carrier's Publication of Libelous Telegram.**

     Where shipper of horses suffered $1,500 damage in one shipment due to libelous telegram of carrier's agent, but there was no permanent injury to shipper's business, such damage was properly pleaded in action to recover for publication of such telegram.

Appeal from Circuit Court, Tripp County; Hon. N. D. Burch, Judge.

Action by E. V. Youngquist and others, copartners, doing business under the firm name and style of the Western Horse Company, against the American Railway Express Company. From a judgment for the plaintiffs and an order denying new trial, defendant appeals. Affirmed.

*Doherty & Talbott,* of Winner, for Appellant.

*E. O. Patterson,* of Washington, D. C., and *George A. Buffington,* of Dallas, for Respondents.

(1)  To point one of the opinion, Respondent cited: Bleecker v. Miller, 40 Okla. 374, 138 Pac. 809.

(2)  To point two, Appellant cited: Drake v. Great Northern Ry. Co. (S. D.), 123 N. W. 82; Byers v. Bourret, 64 Cal. 73, 28 Pac. 62; Choctaw Lumber Co. v. Gilmore, 11 Okla. 462, 68 Pac. 733; Wright v. Jett, 120 Ga. 955, 48 S. E. 345.

(5)  To point five, Appellant cited: Kramer v. Perkins, 15 L. R. A. (N. S.) 1141.

(6)  To point six, Respondent cited: Chaffin v. Lynch, 84 Va. 884.

MORIARTY, C.  This is an action to recover damages which plaintiffs allege that they suffered from the publication by the defendant corporation of a certain telegram alleged to have been false and libelous.  The defendant in its answer pleads both a plea in abatement and a plea in bar.

The plea in abatement alleges that plaintiffs are copartners doing business under a fictitious name, and that said copartnership has not complied with the requirements of the statutes, requiring the publication and filing of a certificate showing the true names of the persons constituting the firm; and defendant says that for this reason the plaintiffs cannot mantain the action and that the same should be abated.  The trial was had in May, 1923.

The evidence introduced at the commencement of the trial shows that the action was begun in June, 1922, the answer setting up the plea in abatement was served in July of that year, and plaintiffs did not comply with the statute until November following.  Of course the complaint shows that the plaintiffs were doing business under a fictitious name, and come within the provisions of section 1334 and 1336 of the Revised Code.  No supplemental complaint or other showing of compliance with the statute was served or filed before the time of trial.

When the evidence showing the facts affecting the plea in abatement had been received, the defendant objected to the introduction of further evidence, and moved that the action be abated. The objection was overruled, and the motion denied, and the court proceeded with the trial of the issues joined by the allegations of the complaint and the plea in bar contained in the answer. This action of the trial court in overruling the plea in abatement is assigned as error.

[1, 2]   Section 1334 provides for the filing of the certificate of names constituting the firm, and section 1336 provides:

"Persons doing business as partners, contrary to the provisions of this article, shall not maintain any action on or on account of any contracts made or transactions had in their partnership name in any court of this state, until they have first filed the certificate and made the publication herein required; provided, however, that if such partners shall at any time comply with the provisions of this article, then such partnership shall have the right

to maintain an action on all partnership contracts and transactions entered into before as well as after compliance with this article."

In several of its decisions this court has passed upon these provisions, practically holding that complaince with the requirement is mandatory, and that the question of noncompliance is properly raised by answer. But the question whether the disqualification to maintain an action applies to an action in tort does not seem to have been presented to this court in any of the previous appeals.

This is a libel action and strictly an action in tort. Had the Legislature intended to make compliance with the statute a prerequisite to maintaining any action in the courts of this state, such intent could be very briefly and unmistakably expressed. But, instead of saying that those falling within the inhibition of the statute should not maintain any action in the courts of the state, the statute says that they "shall not maintain any action on or on account of any contracts made or transactions had." The proviso in the statute shows that it is not the intent of the law to render contracts or transactions void. It is only the remedy that is affected. The statute is in derogation of common law rights, and this is particularly true with reference to the right to recover damages suffered from torts. While such statutes must be given full force according to their express provisions, dilatory pleas are not looked upon with favor by the courts, and, as said by the California Court, in Re Dennery. 89 Cal. 106, 26 P. 640:

"The court will not, by intendment, enlarge the inhibition for the purpose of defeating a remedy to which the party otherwise would be entitled."

The statute not being drawn to include actions in tort, this court will not, by intendment, enlarge the express inhibition by applying it to tort actions. Section 2468 of the California Civil Code provides as follows:

"No person doing business under a fictitious name, or his assignee or assignees, nor any persons doing business as partners contrary to the provisions of this article, or their assignee or assignees, shall maintain any action upon or on account of any contract or contracts made, or transactions had, under such fictitious name, or in their partnership name, in any court of this state

until the certificate has been filed and the publication has been made as herein required."

It will be seen that this statute is practically identical with ours as to the point under discussion, and the California court has held that it does not apply to tort actions. Ralph v. Lockwood, 61 Cal. 155; In re Dennery, 89 Cal. 106, 26 P. 640.

Under somewhat different statutes, intended, however, to prevent the same injurious practices, the courts of other states have held that tort actions are not included within the purpose of such restrictions. Winget v. Grand Trunk Ry. Co., 210 Mich. 100, 177 N. W. 273; Barton v. Thompson's Estate, 225 Mich. 40, 195 N. W. 682; Melcher v. Beeler, 48 Colo. 233, 110 P. 181, 139 Am. St. Rep. 273; Pedroni v. Eppstein, 17 Colo. App. 424, 68 P. 794; Wood v. Erie Ry. Co., 72 N. Y. 196, 28 Am. Rep. 125.

The trial court did not err in overruling the plea in abatement.

As to the merits of the case upon the issue raised by the plea in bar. A jury was drawn, and some evidence taken before the jury, but it was stipulated by the parties that the jury might be excused and the case submitted to the court. The jury was dismissed, and the case tried to the court. The court made findings and conclusions favorable to the plaintiffs, and in accordance therewith entered judgment for plaintiffs in the sum of $1,500 and costs. From said judgment and an order denying a new trial the defendant appeals. The facts ,as found by the trial court, may be summarized as follows:

In March, 1922, plaintiff shipped a carload of horses from Winner, S. D., to Owego, N. Y., the defendant acting as the contracting carrier of the shipment. The horses were examined by a licensed veterinarian at Winner at the time of loading. They were unloaded and examined again at Chicago, and, with the exception of two horses which were found to be sick when they reached Chicago, and which were held at that point, the animals were certified to be healthy and were reloaded and transported to their destination at Owego. Neither of the animals held at Chicago had tuberculosis or any symptom thereof. On March 9, 1922, the defendant's agent at Chicago sent to defendant's agent at Owego the following telegram:

"Chicago, Illinois, March 9, Agent American Express Company, Owego, N. Y., Erie tonight Northwestern 1552 Horses E. V. Youngquist your city four horses removed here placed in hospital account contracted tuberculosis. Suggest careful veterinary inspection made at destination to protect company against claim, undoubtedly horses not in sound health when shipped. Some may have contracted disease en route."

That the statements contained in said telegram that said horses had contracted tuberculosis and were not in sound health when shipped were false. That the said telegram was received by defendant's agent at Owego, N. Y., and the contents thereof were by him communicated to various persons at said place, and became known to prospective horse buyers there, and by reason thereof plaintiffs were unable to sell their said horses at Owego, and, after every reasonable effort had been made and only four animals could be sold there, plaintiffs shipped the remaining animals to another place and there sold them. That, if said telegram had not been published, the entire carload as it arrived at Owego would have sold for $5,000 at that place, but on account of said publication plaintiffs realized from said entire carload the sum of only $2,600 in excess of the expense of reshipment.

From these findings of fact the court concludes that the plaintiffs were damaged in excess of $1,500 by their inability to sell their horses at Owego, for prices which said horses could be sold for had the aforesaid telegram not been published by defendant's agent, as aforesaid. But the court concludes that, as no permanent damage to defendant's business was proven, and only $1,500 was claimed in the complaint as damages suffered from inability to sell the car of horses in controversy, plaintiffs were entitled to judgment in the sum of $1,500, and no more.

Having disposed of the matter of defendant's plea in abatement, there remain for our consideration assignments of error presented and argued by appellant's counsel and dealing with alleged errors of the trial court in the reception of evidence, over defendant's objection, and with the alleged insufficiency of the evidence to support the findings.

[3]    In this state the rule is well established that, where a case is tried to the court without a jury, and, where there is sufficient evidence remaining to support the findings, after eliminating

all objectionable evidence, the judgment will not be reversed on appeal; the presumption being that the court disregarded the objectionable evidence. Squier v. Mitchell et al., 32 S. D. 342, 143 N. W. 277; Durand et al v. Preston, 26 S. D. 222, 128 N. W. 129; Hipple v .Strohbehn, 44 S. D. 102, 182 N. W. 535. This being true, we need only to determine whether there is unobjectionable evidence sufficient to support the findings.

There is abundant and undisputed evidence that the telegram described in the findings was sent and received by defendant's agents. There is also sufficient evidence to support the finding that the contents of the telegram were made public in Owego, N. Y., and that knowledge of such contents reached prospective buyers and interfered with the sale of plaintiffs' horses at that place. There is practically no close question as to evidence sufficient to support any material part of the findings, except those dealing with the manner in which the contents of the telegram were published at Owego, and with the amount of damage suffered by plaintiffs therefrom.

As to the responsibility for the publication of the telegram, it is undisputed that the message was sent from defendant's agent at Chicago to defendant's agent at Owego. The evidence is conflicting as to the manner in which the contents of the telegram were made public at Owego.

George D. Wait, one of the plaintiffs' witnesses, testified:

"There was a bunch of people around when we were unloading at the depot, when the agent said these horses were diseased. There were probably 20 people there."

As to what was said in the presence of these people, the witness Wait testified:

"Dr. Brink was there, and he said to me: 'You can't unload these horses. Going to have to quarantine them. Got contagious disease. He said he got a telegram from Chicago or Buffalo that they were diseased."

[4] The witness further testified that Dr. Brink and Helstern, defendant's agent at Owego, were both at the Owego depot when the statements were made as to the telegram stating that the horses were diseased. He also testified that Helstern said the same things that Dr. Brink said. The evidence as to these matters is unobjectionable, and is sufficient to support the findings objected

to. And appellant's agent at Owego admitted the receipt of a telegram containing practically the same statements testified to by the respondents' witnesses. It is not disputed that this telegram was sent by defendant's Chicago agent. The composing of a telegram and the delivery thereof to a telegraph company for transmission is a sufficient publication to render the composer liable. Newell on Slander and Libel (4th ed.), p. 226; Monson v. Lathrop, 96 Wis. 386, 71 N. W. 596, 65 Am. St. Rep. 54; Muetze v. Tuteur, 77 Wis. 236, 46 N. W. 123, 9 L. R. A. 86, 20 Am. St. Rep. 115; Loibl v. Breidenbach, 78 Wis. 49, 47 N. W. 15.

[5] Reducing libelous matter to writing, and delivering it to any one other than the person injuriously affected thereby, is publication of the libel. This being true, the finding that the telegram was sent by defendant from Chicago to its agent at Owego is sufficient to justify the conclusions and judgment, and the evidence amply supports this finding.

[6] As to defendant's contention that the telegram was a privileged communication: It must be admitted that the circumstances would justify the sending of a message to defendant's Owego agent, directing him to have the horses examined before releasing them. Within the limits of the requirements of the case, the communication would be privileged. But it was only a qualified privilege, and such privilege may be lost by including in the communication any false statement in excess of the necessities of the case. The telegram contained several statements which were false, and which were not at all necessary for the purpose of directing the examination of the horses. The evidence is undisputed that the horses were free from contagious disease, that only two animals were held at Chicago. There was no reason whatever for the statements that any of the horses had contracted tuberculosis, or were not in sound health when shipped. Defendant's Chicago agent could have advised himself as to the falsity of these statements with very little effort on his part. Ordinary discretion would have avoided any reference to tuberculosis, when no one who had examined the horses had reported any such disease. Any claim of privilege was lost by including these false and unnecessary statements in the message.

[7, 8] Appellant further contends that the complaint does not bring the message within the statutory definition of libel, and

does not plead any damages recoverable in this action. Appellant's counsel evidently construe the words, "or which has a tendency to injure him in his occupation," contained in the statutory definition of libel, as referring only to some permanent or continuing injury. Such is not the proper construction. Respondents were then engaged in shipping horses. If the telegram had a tendency to reduce the profits on the car of horses then in transit, it certainly had a tendency to injure them in their occupation. The court specifically found that there was no proof of any permanent injury to respondents' business, and allowed judgment for only the $1,500, which it found they suffered on the sale of the car of horses. This element of damages was properly pleaded.

Finding no error in the record, the judgment and order appealed from are affirmed.