337 P.2d 59

Franklin D. RICHARDS, Plaintiff and Appellant,

v.

Robert A. ANDERSON, Defendant and Respondent.

No. 8970.

Supreme Court of Utah.

March 30, 1959.

---

2. Johnson v. Syme, 1957, 6 Utah 2d 319, 313 P.2d 468, and cases cited therein.

Moreton, Christensen & Christensen, Jay E. Jensen, Salt Lake City, for appellant.

Lawrence L. Summerhays, Rich & Strong, Salt Lake City, for respondent.

CROCKETT, Chief Justice.

Plaintiff sued and defendant counter-claimed for damages to their cars resulting from an intersection collision between the two. After pretrial conference, upon the basis of counsel's statement as to what the proof would show, plaintiff's affidavit and a written report of claim presented as evidence, the court ruled both parties negligent and dismissed the action.

Plaintiff appeals, attacking the summary judgment as arbitrarily depriving him of the right to a trial and to fully present his evidence and contentions. It is true that summary judgment is a severe measure which courts should be reluctant to use, and that doubts should be resolved in favor of allowing a full trial of the case. Yet it does have the salutary purpose of not requiring the time, trouble and expense of trial, when the best showing the plaintiff could make would not entitle him to recover under the law.

When a summary judgment is granted against a party, he is entitled to have the trial court, and this court on review, consider all of the evidence and every inference fairly to be derived therefrom in the light most favorable to him.[1] This rule, relied upon by the plaintiff, is not very helpful here because the only facts before us are contained in the above mentioned documents and the recitals in the

---

1. Coombs v. Perry, 2 Utah 2d 381, 275 P.2d 680, 681: " * * * the judgment and proceedings in the lower court are presumptively correct with the burden upon defendant [appellant] to show error."

judgment signed by the trial court based upon the pretrial conference. In the absence of any other record it stands unassailed as reflecting the facts presented to the court. If the plaintiff contends to the contrary, he has the burden of bringing the record here to show otherwise, because the burden is upon the appellant to show error.[2]

On March 6, 1957, during the morning traffic rush at about 8 a. m. the defendant drove his car south on University Street toward its intersection with Fifth South (also Highway U.S. 40), a heavily traveled east-west arterial highway. It is 88 feet wide, has three traffic lanes in each direction and has a concrete island in the middle. The outside lane is 23 feet wide, the others 10 feet each. The defendant made the required stop before entering the highway, waited for several westbound cars to go by; two cars in the outside lanes stopped to allow him to enter the intersection, he proceeded past them and five feet into the center lane, a total of 38 feet, when the left front fender of his car collided with the right front fender of plaintiff's car, which was coming from the east in the center lane. Defendant's speed is given as 5 to 10 m. p. h., and plaintiff's at 15 to 20 m. p. h. Plaintiff says he failed to see defendant until he was a few feet from plaintiff and too late to avoid the collision.

It is the plaintiff's contention that, being on a through highway, he had the right of way over the defendant. He relies on Section 41-6-74, U.C.A.1953, which requires a vehicle entering a through highway to stop and yield the right of way to vehicles traveling upon such through highway which "have entered the intersection * * * or which are approaching so closely * * * as to constitute an immediate hazard * * *." But the plaintiff fails to note and give heed to the further provision of that section, that a "driver having so yielded may proceed *and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.*" (Emphasis added.)

■■ It is clear that the defendant entered the intersection considerably ahead of the plaintiff. The question then becomes whether plaintiff's automobile was so close to the intersection to constitute an "immediate hazard" to defendant when the latter entered the intersection. There is, of course, no precise set of measurements by which an immediate hazard can be gauged. It must be judged on the basis of common sense in the light of existing circumstances. In reference to a similar situation the Supreme Court of Delaware has said that an "immediate hazard" is created when a

2. Morris v. Farnsworth Motel, 123 Utah 289, 259 P.2d 297.

vehicle approaches an intersection on a favored street at a reasonable speed under such circumstances that, if the disfavored driver proceeds into the intersection it will force the favored driver to sharply and suddenly check his progress or stop in order to avoid collision.[3] Conversely, if the disfavored driver has made his stop and deferred to all vehicles that would be required to go into a sharp or sudden braking to avoid collision, the cars far enough away have a clear margin to observe and make a smooth and safe stop are not an "immediate hazard" and are required to yield to the driver already at the intersection.

An analysis of the time, speed, and distance factors shows plainly that the plaintiff had more than ample time to observe the defendant and avoid colliding with him. After defendant had waited at the entrance to the intersection and allowed other cars to go by, and cars in the outside and center lanes had stopped and deferred to him, he traveled 38 feet, reaching the speed of 5 to 10 m. p. h. Computing his average speed between zero at stop to his maximum acceleration of 10 m. p. h., equals 5 m. p. h.; at which he would travel about 7½ feet per second, amounting to just about 5 seconds elapsed time in the intersection. During that time the plaintiff, even at the minimum speed of 15 m. p. h. or 22.5 feet per second, would have traveled 112.5 feet. (He was actually traveling a good deal faster because his own statement says he was decelerating.) At the speed of 15 m. p. h., in his reaction time of three-fourths second, he would travel 16½ feet and require 18 feet for stopping with only passable brakes.[4] This makes a total of stopping distance of 34.5 feet, leaving a margin of 78 feet. For any increase in plaintiff's speed his distance away and his opportunity to stop increase proportionately.

The plaintiff advances the excuse that the two cars stopped in the lanes to his right obscured his view of the defendant. The fact is that these cars are each about six feet wide. They thus occupied only two such spots in a total width of 33 feet. While it was necessary for plaintiff to be watching his own lane ahead, his vision was not like looking through a pipe or a tunnel. His angle of vision would take in the moving objects in the adjacent lanes, particularly a moving object such as defendant's car, had be been looking.[5]

▮ It is a well settled rule that one may not be heard to say that he did not see what was plain to be seen. He either

3. See Fusco v. Dauphin, 1950, 8 Terry 140, 47 Del. 140, 88 A.2d 813.

4. Chart prepared by Traffic Engineer S. S. Taylor, published by Utah Safety Council.

5. See discussion in Martin v. Stevens, 121 Utah 484, 243 P.2d 747–749.

failed to look, or saw and failed to heed, either of which makes him negligent.[6] The plaintiff seems to have been guilty of the all too common fault of modern drivers of assuming that because they are on a through highway they have the absolute right of way, and that one desiring to enter or cross it must do so at his peril. The evidence amply justified the trial court in determining that he was precluded from recovery because of his own negligence.

Affirmed. Costs to defendant (respondent).

WORTHEN and McDONOUGH, JJ., concur.

WADE and HENRIOD, JJ., concur in result.

6. See Compton v. Ogden Union Ry. & Depot Co., 120 Utah 453, 235 P.2d 515.