360 P.2d 1018

**H. LeRoy GAMMON, Plaintiff and Appellant,**

**v.**

**FEDERATED MILK PRODUCERS ASSO-CIATION, INC., Defendant and Respondent.**

No. 9213.

Supreme Court of Utah.

April 7, 1961.

Bridwell, Reynolds & Cuthbert, Salt Lake City, for appellant.

Moffat, Iverson & Elggren, Salt Lake City, for respondent.

Ray, Quinney & Nebeker, Albert R. Bowen, Salt Lake City, Harris & Harris,

Logan, Warwick C. Lamoreaux, Salt Lake City, amici curiae.

CALLISTER, Justice.

In this action plaintiff seeks (1) treble damages for injuries compensable under the Anti-trust Statutes [1] and (2) damages resulting from an alleged malicious interference with his rights under a contract. The lower court entered a summary judgment in favor of the defendant and plaintiff appeals.

Defendant is an agricultural cooperative association of milk producers organized under and pursuant to Title 3, U.C.A.1953. The plaintiff, a trucker, in 1948 commenced hauling raw milk for certain Utah County members of the defendant association from their farms to processors in Salt Lake City. Under date of December 4, 1951, plaintiff entered into a written contract with this group of Utah County members wherein he agreed to haul their milk to Salt Lake City for a period of five years at a specified rate. It appears from the record that defendant had knowledge of this agreement from its inception.

At all times mentioned herein, and prior to the execution of plaintiff's contract, the defendant had the following agreement with its members:

"Application For Membership in Federated Milk Producers

"The undersigned hereby applies for membership in the Federated Milk Producers. Upon acceptance of this application, the applicant hereby appoints said Federated Milk Producers his exclusive agent for the purpose of selling all market milk produced by the undersigned for sale in the greater Salt Lake Metropolitan area, which shall include the authority to negotiate and fix all the terms and conditions surrounding the sale, delivery and payment for said milk."

In the latter part of 1954, according to plaintiff, he was approached by a Utah County member, who was also a member of defendant's board of directors, and advised that he would have to stop hauling to an independent dairy in Salt Lake City or defendant would take the milk haulage of its members from him. The reason given for this demand was that the independent dairy was not "coming up to the standard on the price of milk."

Shortly after this demand, and commencing in the early part of 1955, many of the milk producers began changing their method of handling milk from a milk can operation to a farm tank system which requires

1. 50-1-10, U.C.A.1953: "In case any person or persons shall do, cause to be done, or permit to be done, any act, matter or thing in this chapter prohibited or declared to be unlawful, such person or persons shall be liable to the person or persons injured thereby for treble the amount of damages sustained in consequence of any such violation."

the use of tank trucks in the delivery of the milk.[2] Although plaintiff offered to purchase tank trucks and demanded that his contract be honored, defendant obtained its own tank trucks and commenced hauling the milk of its members upon their conversion to the tank farm system. This conversion was quite general and the loss of his customers forced plaintiff out of business.

Depositions, affidavits and other materials were submitted to the court below and both parties moved for summary judgment. Defendant's motion was granted as to both causes of action.

With regard to his first cause of action, plaintiff argues that the contract between the defendant and its members, together with the assumption of the milk haulage by defendant, created a combination having for its object or effect the controlling of prices and the cost of transportation in violation of Article XII, Sec. 20 of the Utah Constitution [3] and its statutory counterpart, 50–1–1, U.C.A.1953.

In his complaint, plaintiff alleges that "defendant substantially controls the pricing, transportation and marketing of milk in the State of Utah, and its practices constitute a monopoly and restraint of trade in milk in the State of Utah, proscribed by Article XII, Section 20. Utah State Constitution, and Title 50, Chapter 1, Utah Code Annotated." However, nowhere in his complaint does the plaintiff allege that such practices caused him direct injury.

In support of this allegation, plaintiff relies primarily upon alleged price fixing by the defendant. Assuming that defendant did fix or control prices of milk in violation of our Constitution and anti-trust statutes, is the plaintiff in a position to maintain the statutory action for treble damages? We think not. The damage suffered by plaintiff is the loss of his milk haul which cannot be attributed directly to the fixing or controlling by defendant of the price of milk to the dairies or processors. In fact, under plaintiff's theory of the case, the defendant was controlling

2. Under the milk can operation, the producers would put the milk into cans which were then delivered by truck to the dairies or processors. Each can would then be sampled to determine the purity and butterfat content of the milk contained therein. The producer would be paid in accordance with the result of the sampling.

Under the farm tank system, the milk is put into a tank located on the producer's farm. From this tank the milk is pumped into a tank truck for delivery. Because the milk from several producers is collected in the same truck, samples of the milk are taken before the milk enters the truck. These samples are given to the recipient dairy and the defendant for testing.

3. "Any combination by individuals, corporations, or associations, having for its object or effect the controlling of the price of any products of the soil, or of any article of manufacture or commerce, or the cost of exchange or transportation, is prohibited, and is hereby declared unlawful, and against public policy. * * *"

or fixing prices prior to plaintiff's engagement to haul the milk. In order to recover treble damages, not only must a violation of the anti-trust provisions of the law be established, but also that the acts constituting such a violation proximately caused the damages of which complaint is made.[4] Only those at whom the violation is directly aimed, or who have been directly harmed may recover.[5] These reasons for precluding recovery by plaintiff of treble damages would also be applicable to the alleged violation of 50–1–2, U.C.A.1953 [6] insofar as the fixing or controlling of milk prices is concerned.

Although plaintiff, in his brief, complains of a combination having for its object or effect the controlling of the *cost* of transportation, such contention is not supported by the record and the complaint contains no allegation to this effect.

Plaintiff next contends that defendant acted unlawfully under 50–1–3, U.C.A.1953 [7] in that the haulage by the defendant is intended to and does monopolize a part of trade or commerce. By its very wording, it is apparent that this statute has no application to the instant case. The plaintiff does not contend nor do the facts indicate, that the defendant corporation (or its agents, officers, etc.) entered into a combination with other persons with the management or control of the combination being placed in the hands of a trustee.

We find no support in the record that the defendant, in violation of our anti-trust laws, controls the transportation and marketing of milk in the State of

---

4. 1 Toulmin, Anti-Trust Laws, pp. 332, 333; Anti-Trust Enforcement by Private Parties, 61 Yale L.J. 1010, 1016; Glenn Coal Co. v. Dickinson, 4 Cir., 72 F.2d 885.

5. Productive Inventions v. Trico Products, 2 Cir., 224 F.2d 678.

6. "Any person or association of persons who shall create, enter into, or become a member of or a party to, any pool, trust, agreement, combination, confederation or understanding with any other person or persons to regulate or fix the price of any article of merchandise or commodity; or who shall enter into, or become a member of or a party to, any pool, trust, agreement, contract, combination or confederation to fix or limit the amount or quantity of any article, commodity or merchandise to be manufactured, mined, produced or sold in this state shall be deemed and adjudged guilty of a conspiracy to defraud, and shall be subject to punishment as hereinafter provided."

7. "It shall not be lawful for any *corporation* to issue or to own trust certificates; or for any *corporation* or any agent, officer, employee, director or stockholder of any corporation, to enter into any combination, contract or agreement with any person or persons, the purpose or effect of which shall be to place the management or control of such combination or combinations, or the manufactured products thereof, *in the hands of a trustee* with intent to limit or fix the price, or lessen the production and sale, of any article of commerce, or its use or consumption, or to prevent, restrict or diminish the manufacture or output of any such article, *or to monopolize any part of trade or commerce within this state.*" (emphasis added)

Utah. The record indicates, and the lower court so found, that the members of defendant produce and defendant hauls to market approximately fifty per cent of the Grade A milk produced in the Great Basin Marketing area. However, absent any allegation or proof that injury to the public resulted or that prices or quantities were controlled or fixed thereby, there is no constitutional or statutory interdiction against a person controlling a portion of trade or commerce.

For the foregoing reasons we conclude that the lower court correctly granted summary judgment for defendant upon plaintiff's first cause of action. However, for the reasons to be pointed out, it is our opinion that it was error to grant defendant summary judgment upon plaintiff's second cause of action relating to the alleged interference with his contractual rights.

As a defense to this second cause of action defendant introduced its contract with the members. The lower court held that the defendant, in taking over the milk haulage, was acting pursuant to the terms of this prior contract and therefore did not unlawfully interfere with plaintiff's subsequent contract with defendant's members.

■ Ordinarily, there is no liability for procuring a breach of contract where the breach is caused by the exercise of an absolute right—that is, an act which a person has a definite legal right to do without any qualification.[8] However, plaintiff contends that the agreement between the defendant and its members is void because it is in violation of Article XII, Sec. 20 of the Utah State Constitution and the anti-trust statutes.[9]

■ The agreement in question is lawful upon its face and the mere fact that it might, under some circumstances, result in an act contrary to law does not invalidate it for it is presumed that the parties will conform to the law.[10] However, parol evidence is competent to show that a contract, though lawful on its face, is illegal or part of an illegal transaction.[11]

■ Summary judgment having been granted against the plaintiff, we must consider the record in the light most favorable to him.[12] As previously stated, the record shows that the defendant markets approximately fifty per cent of the Grade A milk produced in the Greater Basin Marketing area. The record further reveals that the defendant, as testified by its

8. 26 A.L.R.2d 1227, 1259.
9. 50-1-6, U.C.A.1953: "Any contract or agreement in violation of any provision of this chapter shall be absolutely void."
10. 5 Williston on Contracts, Rev.Ed., p. 4559.
11. Morey v. Paladini, 187 Cal. 727, 203 P. 760.
12. Richards v. Anderson, 9 Utah 2d 17, 337 P.2d 59.

executive secretary, fixes the minimum price for which the members' milk is sold to the distributors and processors.

Defendant contends that section 19(a) [13] of our Uniform Agricultural Cooperative Association Act, under which it is organized, exempts it from the provisions of Article XII, Sec. 20 of our anti-trust statutes. It may be that courts of other jurisdictions have somewhat uniformly held that cooperative marketing associations, organized under similar statutes, are lawful combinations and not within the condemnation of state constitutional provisions and anti-trust statutes.[14] However, it is indicated in some of the decisions from these jurisdictions that such associations are not immune from the provisions of anti-trust laws if they do, in fact, engage in competition stifling practices.[15] The Supreme Court of the United States declared in a recent case [16] that the exemptions afforded agricultural cooperative associations by the Clayton [17] and Capper-Volstead [18] Acts did not grant them unrestricted power to re-

strain trade or to achieve monopoly. That court stated:

"The full effect of § 6 (Clayton Act) is that a group of farmers acting together as a single entity in an association cannot be restrained 'from lawfully carrying out the *legitimate objects* thereof,' but the section cannot support the contention that it gives such an entity full freedom to engage in predatory trade practices."

While we subscribe to the foregoing quotation in interpreting the meaning and effect of section 19(a) of the Uniform Agricultural Cooperative Association Act, it is not necessary, for the purposes of this case, to determine whether the defendant is in violation of our anti-trust statutes for we are confronted with the clear and unambiguous language of Article XII, Sec. 20 of our Constitution which prohibits *any* combination having for its object or effect the controlling of prices. This constitutional provision recently received this court's attention in General Electric Co. v.

---

13. 3–1–19(a), U.C.A.1953: "No association complying with the terms hereof shall be deemed to be a conspiracy, or a combination in restraint of trade, or an illegal monopoly; or be deemed to have been formed for the purpose of lessening competition or fixing prices arbitrarily, nor shall the contracts between the association and its members, or any agreement authorized in this act, be construed as an unlawful restraint of trade, or as a part of a conspiracy or combination to accomplish an improper or illegal purpose or act."

14. 58 C.J.S. Monopolies § 78, p. 1066.
15. See: Warren v. Alabama Farm Bureau, 213 Ala. 61, 104 So. 264; Minnesota Wheat Growers Co-op. Marketing Ass'n v. Huggins, 162 Minn. 471, 203 N.W. 420.
16. Maryland & Virginia Milk Prod. Ass'n v. U. S., 362 U.S. 458, 80 S.Ct. 847, 862, 4 L.Ed.2d 880.
17. 15 U.S.C.A. § 17.
18. 7 U.S.C.A. § 291.

Thrifty Sales [19] with regard to the Utah Fair Trade Act.[20] This latter act was held invalid as an attempt to fix prices in contravention of the constitutional provision. This court said:

"* * * our antiprice-fixing provision is in our Constitution, which must prevail over any statutory enactment inconsistent therewith, however laudable or desirable, or however wise * * * such legislation may seem. * * *

"* * * the framers (of our Constitution) simply did not want price fixing by any combination. We see no reason which would impel us to ignore nor to vary from the plain import of the words of the Constitution, even though events may have occurred which probably were not foreseen at the time the provision was adopted. * * *"

We are aware of the legal principles that all doubts should be resolved in favor of the constitutionality of a statute and that the courts should so interpret, if at all possible, a statute so as to uphold its constitutionality.[21] Therefore, we hold that section 19(a) of the Uniform Agricultural Cooperative Association Act does not endeavor to permit associations organized thereunder to control prices as interdicted by our Constitution. To hold otherwise would render that section invalid.

Upon the basis of the record presented here it appears that the defendant acting under the provisions of the agreement with its members has engaged in fixing the minimum price,[22] for which milk was sold to distributors and processors, and in doing so its conduct has come within the prohibitions of Article XII, Section 20, of our Constitution; and accordingly the contract must be regarded as void and it therefore cannot be set up as a defense against the plaintiff's second cause of action.[23]

Reversed and remanded for proceedings consistent with this opinion. Costs to the plaintiff (appellant).

We concur:

WADE, C. J., and HENRIOD, McDONOUGH and CROCKETT, JJ.

19. 5 Utah 2d 326, 301 P.2d 741, 748.
20. Title 13, Chap. 4, U.C.A.1953.
21. Norville v. State Tax Commission, 98 Utah 170, 97 P.2d 937, 126 A.L.R. 1318.
22. Fixing minimum prices, like other types of price fixing, is illegal per se. Schwegmann Bros. v. Calvert Distillers, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, 1043.
23. Owen County Burley Tobacco Soc. v. Brumback, 128 Ky. 137, 107 S.W. 710.