383 P.2d 402

**H. LeRoy GAMMON, Plaintiff and Appellant,**

v.

**FEDERATED MILK PRODUCERS ASSOCIATION, INC., Defendant and Respondent.**

**No. 9789.**

Supreme Court of Utah.

June 28, 1963.

See also 12 Utah 2d 189, 364 P.2d 417.

George E. Bridwell, Salt Lake City, for appellant.

Moffat, Iverson & Elggren, Richard H. Moffat, Salt Lake City, for respondent.

WADE, Justice.

This appeal is from a directed verdict in favor of the Federated Milk Producers, Inc., respondent herein. This is the second appeal in this matter. The first appeal was from a summary judgment in favor of respondent Federated Milk Producers.

Appellant commenced his action to recover treble damages for loss of a milk hauling route allegedly due to the substantial controlling, pricing, marketing and transportation of milk in Utah by respondent so that it violated the provisions of Art. XII, Sec. 20, Utah State Constitution, and Sec. 50–1–1, U.C.A.1953.[1] He also sued for damages resulting from malicious inter-

---

1. Art. XII, Sec. 20, Utah State Constitution: "Any combination by individuals, corporations, or associations, having for its object or effect the controlling of the price of any products of the soil, or of any article of manufacture or commerce, or the cost of exchange or transportation, is prohibited, and hereby declared unlawful, and against public policy. The Legislature shall pass laws for the enforcement of this section by adequate penalties, and in case of incorporated com-panies, if necessary for that purpose, it may declare a forfeiture of their franchise." Sec. 50–1–1, U.C.A.1953: "Combinations to control prices forbidden.—Any combination by persons having for its object or effort the controlling of the prices of any professional services, any products of the soil, any article of manufacture or commerce, or the cost of exchange or transportation, is prohibited and declared unlawful."

ference with his exclusive rights under a written contract to haul milk for certain producers. In the first appeal in this case this court held[2] that from the depositions, affidavits and other materials submitted to the District Court it did not err in granting a summary judgment on appellant's first cause of action based on the alleged violations of the provisions of Art. XII, Sec. 20, Utah State Constitution and Sec. 50–1–1, U.C.A., 1953, because appellant had failed to allege nor was there anything in the record that the price fixing practices of respondent was a direct cause of his injury. This court having rendered its decision that the district court did not err in granting the summary judgment in favor of respondent herein on appellant's first cause of action and on trial in the second proceeding the appellant herein having failed to amend and plead direct injury, or prove facts different from those considered by this court in the first appeal on his first cause of action, that decision became the law of the case and binding on the parties to this action.[3]

As to appellant's second cause of action based on respondent's wilful and malicious interference with contractual rights to haul milk for respondent's members, this court reversed the district court and remanded the latter back for further proceedings on the ground that respondent's agreement with its members that it should have "the authority to negotiate and fix all the terms and conditions surrounding the sale, delivery and payment for said milk" while lawful on its face could, under certain circumstances, result in acts contrary to law. The lower court in the first proceeding granted the summary judgment in favor of respondent on appellant's second cause of action because respondent Federated Milk had a prior contract with its members to haul the milk and therefore did not unlawfully interfere with any alleged rights of appellant to haul this milk. We held this was error because even though the agreement was lawful on its face, parol evidence would be competent to show that as a matter of fact respondent's agreement with its members violated our constitutional prohibitions against price fixing and therefore respondent's agreement was invalid and no defense to appellant's second cause of action.

On the trial of this action in the second proceeding, appellant herein introduced in evidence a document upon which he based his cause of action for interference by respondent with his written contractual right to haul milk. This document, executed by officers of the first party and by appellant, reads as follows:

2. Gammon v. Federated Milk Producers Ass'n, Inc., 11 Utah 2d 421, 360 P.2d 1018.

3. Helper State Bank v. Crus, 95 Utah 320, 81 P.2d 359.

**294**

"Lehi, Utah

"December 4, 1951

"A contract between the Lehi, American Fork, Pleasant Grove Federated Dairy Association Members, known as the First Party, and H. LeRoy Gammon, known as the Second Party prescribing the terms for picking up milk and delivering same to Salt Lake City.

"1. Second Party agrees to pick up milk from producers on route designated by the Board of the First Party and to collect milk from other pickup haulers and deliver same to Salt Lake City.

"2. Second Party agrees to abide by all the rules outlined by the Salt Lake City Board of Health and any rules set forth by the First Party for the protection and sanitation of said milk.

"3. First Party agrees to pay Second Party according to the following schedules:

* * * * * *

"4. First Party shall instruct the Arden Dairy & Cottonwood Dairy to make payment to Second Party out of money due producers for milk delivered.

"5. This Contract shall be in force for a period of five years unless ended by mutual agreement of both parties or by wilful violation by either party."

 The document, while not artfully drawn, is unambiguous and self-explanatory. It states that it is a contract prescribing the terms for the picking up and delivering of milk by appellant to Salt Lake City. These terms and compensation to be paid therefor are set forth in detail in clear and simple language. However, nowhere is it stated that the first parties agreed to use exclusively, or at all, appellant's hauling services. It is apparent that the first party only obligated itself to pay the scheduled compensation and to instruct the dairies to pay that compensation directly to appellant in the event his services were used to haul milk. There being no obligation on the part of the first party to provide appellant with milk to haul, it seems that appellant's contract is more in the nature of a continuing offer, analogous to the rights usually granted in an option.[4] That is, the members of the first party have the option to avail themselves of appellant's services under the terms prescribed in the document, but are not obligated to do so.

The court granted the motion of respondent Federated Milk Producers, Inc. for a directed verdict because it concluded that appellant Gammon had no contractual right under the written document upon which he based his action and that furthermore since this document did not give Gammon the right to haul the milk of respondents' mem-

4. 12 Am.Jur. Contracts, p. 524, Sec. 27.

ber producers it followed that respondent could not be found to have interfered with a contractual right which did not exist.

The evidence was uncontradicted that under the option agreement Gammon had with the Lehi etc. Dairy Association that Gammon transported its members' milk under its terms for about four years. There was substantial evidence that by 1955 a number of member producers of respondent Federated Milk Producers, Inc. were changing from milk can operation to milk tank operation, and Federated thereupon determined and advised such members that henceforth it would haul all their milk in its own tank trucks. This action was taken by respondent even though it knew Gammon had been hauling milk for these members under the terms of the option contract he had with them, and in spite of the fact that Gammon offered to provide a tank truck so that he could continue to haul the milk of those members who were converting to tanks. There was also evidence from which a jury could reasonably find that respondent Federated Milk Producers, Inc., in order to better enable it to control the pricing of milk had requested appellant Gammon to cease hauling milk for a dairy which was paying more for producers' milk and selling for a lesser price to the public in competition with the dairies with which respondent dealt; and upon Gammon's failure to cease such hauling, those members of Federated who had converted to tanks were instructed not to allow Gammon to haul their milk.

As we have stated above, this court in our first opinion held that it appeared from the record presented to us that Federated had violated the prohibition of Art. XII, Sec. 20 of our Constitution, and our supplementary statute, Sec. 50-1-1, U.C.A. 1953, by engaging in the fixing of minimum prices for milk under its contract with its members and therefore that contract was void. From the evidence in the instant case a jury could reasonably find that Federated, in order to enable it to obtain its objective of fixing minimum prices for its members' milk had persuaded such members to refrain from the use of his services for hauling their milk. Under such a state of fact Federated's interference with Gammon's business would be unlawful and not justifiable as serving its own legitimate interests. Gammon's loss of business under such circumstances would be compensable.[5]

Although Gammon pleaded interference with written contractual rights, whereas from the evidence it could reasonably be found there was an unlawful interference with his business by Federated to his damage regardless of any written con-

5. 30 Am.Jur. Interference, Sec. 46, p. 86; Owen v. Williams, 322 Mass. 356, 77 N.E. 2d 318, 9 A.L.R.2d 223 and Annotation commencing page 228.

tractual rights, under Rule 15(b) Utah Rules of Civil Procedure [6] the court should have submitted the case to the jury for determination of whether Federated in urging its members who had converted to tank method to use only its transportation services did so to further its own legitimate business interests, or had unjustifiably persuaded its members not to use Gammon's services so as to enable it to fix minimum prices for milk in violation of our Constitutional and statutory prohibitions against such activity. In the first instance it would not be unjustifiable whereas in the second it would be. If the jury should find that the interference with Gammon's business by Federated was for the unlawful purpose of price fixing, Gammon would be entitled to damages for his loss of business, but as we held in our first opinion,[7] he would not be entitled to treble damages under the provisions of Sec. 50-1-10, U.C.A.1953.

Reversed. Costs to appellant.

HENRIOD, C. J., and McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

6. Rule 15(b) U.R.C.P. "Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. * * *"

7. Gammon v. Federated Milk Producers Assn., Inc., 11 Utah 2d 421, 360 P.2d 1018.