## No. 11,512.

PETER GRAHAM VS. ST. CHARLES STREET RAILROAD COMPANY ET AL.

The intentional causing of loss by one man to another without justifiable cause, and with malicious purpose to inflict it, is of itself a wrong, and it is a general principle that every act of man which causes damage to another obliges him by whose fault it happened to repair it.

While it may be conceded that a person has an absolute right to refuse to have business relations with any person whomsoever, whether the refusal be based

upon reason, or be the result of whim, caprice, prejudice or malice, and that there is no law which could reach him for so doing, it is not equally true that he can always, from such motives, influence another person to do the same without incurring legal liability. The question of liability or not, in different cases, would be dependent upon their own special facts, and upon varying conditions and relations.

APPEAL from the Civil District Court for the Parish of Orleans. Rightor, J.

Walter H. Rogers and William B. Lancaster for Plaintiff, Appellant.

Harry H. Hall for Defendants, Appellees.

The opinion of the court was delivered by

NICHOLLS, C. J.    Plaintiff seeks to recover a judgment against the St. Charles Street Railroad Company and Thomas Newman in solido for five thousand dollars.

Defendants filed an exception of "no cause of action," which having been sustained and the suit dismissed plaintiff has appealed.

The action is grounded upon the following allegations:

"That Newman is the foreman of the company, and as such has the power of employing and discharging its employés; that for a considerable time, less than one year, he has persistently abused said power in making use of it for persecuting petitioner and injuring him in his business.    That petitioner is proprietor of a substantial grocery store at the corner of Baronne and Eighth streets of New Orleans—the stable and buildings of said company occupying another corner of the same street intersection; that Newman has frequently and continuously instructed the men under his control in said capacity, that they must not deal at petitioner's store, and that he would discharge them if they did; that he especially directed such commands and threats to Henry Rigner, Joseph Santos and Lee Halliday in the early part of the year 1893, say in the months of February and March and thereabouts, and to various other persons within the past eight months; that he did discharge one Andrew Heffner from the employ of said company, on or about the 19th of March, 1893, for no other cause than that said Heffner had manifested a friendship for petitioner by speaking in his favor; that the animus of all this was that of ill will against petitioner and

the deliberate desire to injure him; that in all said conduct and actions he was within the scope of his employment by said company; that in many other ways said Newman has manifested his ill feeling and malevolence toward petitioner; that petitioner has suffered loss in his business to the extent of one thousand dollars in the patronage thus driven away and diverted, which he would otherwise have enjoyed; that petitioner has also suffered great annoyance and humiliation from the notoriety which their persecution has obtained in the neighborhood through the openness with which it was carried on and from the ridicule thereby engendered, the injury from which he estimates at not less than five hundred dollars; that he is entitled to punitory and exemplary damages in the further sum of thirty-five hundred dollars for said tortious, wanton, malicious and unprovoked persecution.''

Defendants' counsel in his brief refers us to the case of Orr vs. Home Mutual Insurance Company *et al.*, 12 An. 255, as containing a clear exposition of the principle upon which this defence rests. He says: ''Defendants had the legal right to discharge their servants arbitrarily and without cause. The exercise of a legal right gives no cause of action against them. If the plaintiff be injured it is *damnum absque injuria*. No authority has been suggested in opposition to the principle that a man has an undoubted right to employ labor and fix the terms and conditions of that employment in his discretion. In the instant case defendants had the absolute legal right, the exercise of which was proper in the conduct of their business, to prohibit their employés from going to grocery stores or barrooms or from dealing in any way or with any person in such manner as might be prejudicial to the interest of their business. They had the legal right to insist upon abstention in dealing as a condition precedent to their employment or retention in service. If the employés did not see fit to comply with these restrictions they were at liberty to leave the employment. They were not coerced in any sense of the word. They were free agents. They could have continued dealing with plaintiff if they saw fit, but they could not so deal and remain in the employment of the defendant company. Defendants were exercising a legal right.''

The plaintiff in this case does not appear before us either as one who, having sought employment from defendants, and been refused by reason of what he alleges to be unreasonable, unwarrantable re-

quirements at his hands, as conditions precedent to being taken into service, claims damages from defendants, nor as one who, having been employed by the defendants under circumstances such as to have legally authorized the employer, at any moment and without cause assigned, to discharge him, claims that he has legal ground of complaint for the reason that the discharge was arbitrary, wanton and malicious. Had this case presented features of that kind the arguments which counsel makes would be unanswerable. A complainant under such circumstances would find himself met by the principle which has taken the shape of a maxim, "*Neminem lædit qui jure suo utitur.*"

The issue before us is whether, while the plaintiff, engaged in a lawful business, is legitimately earning his livelihood by and through the custom and patronage of others, the defendant, a corporation, and its foreman, having the power of employing and discharging large numbers of persons, can, without incurring legal liability therefor, without justifiable cause, and moved solely by a malicious and wanton intent and design to injure the plaintiff, use their power of employment and discharge upon persons seeking employment from them, or already in their employ, so as to cause those who are already dealing with the plaintiff to desist from further doing so, and those who would desire to do so from carrying out their wishes by threats of non-employment or discharge. In so doing the defendant would not only control their own will, action and conduct, but forcibly control and change from pure motives of malice the choice and will of others through fear of non-employment or discharge. This will and power of choice, both the plaintiff and the parties themselves are entitled to have left free, and not have coerced, in order simply to work the former, damage and injury.

In Longshore Printing and Publishing Company vs. Howell, 38 Pacific Reporter, 553, the court said "every man has a right to require that he be protected in his property rights," and quotes approvingly and correctly a citation to the effect that "the labor and skill of the workman or the professional man—be it of high or low degree—the plant of a manufacturer, the equipment of a farmer, the investments of commerce, are all in equal sense property."

In Delz vs. Winfree *et al.*, decided by the Supreme Court of Texas, 16 Southwestern Reporter, 112, the court said: "Every man has a right to use the fruits and advantages of his own enterprise, skill

and credit.   He has no right to be protected against competition, but he has the right to be protected from malicious and wanton interference, disturbance or annoyance.   If the disturbance or loss come as a result of competition, or the exercise of like rights by others, it is *damnum absque injuria*, unless some superior right, by contract or otherwise, is interfered with.

"But if it comes from merely wanton or malicious acts of others, without the justification of competition or service of any interest or lawful purpose, it then stands upon a different footing."

"In the case at bar defendant has committed the error of enlarging a right into a wrong, and applying to it the maxim "*Neminem lædit qui jure suo utitur.*"

In dealing with the question before us, we could entirely disregard, as a mere incident or accident of the case, the particular instrumentality by and through which the alleged damage and injury to plaintiff was inflicted.   If it was accomplished under circumstances such as to give rise to legal liability, it would matter little whether it was through the power and influence which an employer can bring to bear upon the conduct and actions of his actual or prospective employés or through some other means.

For the purposes of this opinion, we have taken up and followed the line of discussion and argument adopted and presented by both sides, and passed upon the general legal proposition advanced by plaintiff and disputed by defendant, without subjecting plaintiff's petition as to its exact language and arrangement to the strictest rules of pleading.   From that standpoint it is open to some criticism, but we have viewed it as substantially raising the issues presented in the briefs.

We do not undertake to lay down any general rule by which should be ascertained and tested the right of one man to control and direct against his will the action and conduct of another to the injury and prejudice of third persons under the different relations and varying conditions of life.   We do not mean for an instant to say that defendants may not, on the trial of this case upon the merits, justify any conduct which they may have pursued in respect to the plaintiff. We simply say that the whole matter should be thrown open to inquiry and investigation.

In the case of Delz vs. Winfree, cited above, counsel laid down a proposition which the court said might be conceded as correct, to the

effect that "a person has an absolute right to have business relations with any person whomsoever, whether the refusal is based upon reason or is the result of whim, caprice, prejudice or malice, and there is no law which forces a man to part with his title to his property," but it declared that "the privilege here asserted must be limited, however, to the individual action of the party who asserts the right. It is not equally true that a person may from such motives influence another person to do the same. If without such motive, the cause of one person's interference with the property or privilege of another is to serve some legitimate right or interest of his own, he may do acts himself, or cause other persons to do them, that injuriously affect a third party so long as no definite legal right of such third party is violated. In the case of Walker vs. Cronin, 107 Mass. 562, it was recognized to be a general principle that "in all cases where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case to be repaired in damages. The intentional causing of such loss to another without justifiable cause, and with malicious purpose to inflict it, is of itself a wrong."

We are of the opinion that the exception of no cause of action should have been overruled and the parties should have been made to go to trial on the merits. It is ordered, adjudged and decreed that the judgment appealed from is annulled, avoided and reversed, and that the exception of no cause of action filed by the defendant in the District Court be and the same is hereby overruled, and this cause is ordered to be remanded to the lower court for further proceedings according to law.