565 P.2d 190

C. George EDWARDS, Appellant,

v.

The ANACONDA COMPANY, a Foreign Corporation, J. B. (Jack) Knaebel and Jane Doe Knaebel, Robert Lynn and Jane Doe Lynn, John Doe, Jane Doe, Richard Roe, the ABC Company, and XYZ Company, Appellees.

No. 2 CA–CIV 2232.

Court of Appeals of Arizona, Division 2.

March 28, 1977.

Rehearing Denied May 3, 1977.

Review Denied June 1, 1977.

**314**

Verity, Smith, Lacy, Allen & Kearns, P. C., by Kenneth L. Allen and John F. Munger, Tucson, for appellant.

Chandler, Tullar, Udall & Richmond by Thomas Chandler and Dan Cavett, Tucson, for appellees.

HATHAWAY, Judge.

The appellant, George Edwards, sued the Anaconda Company for intentional interference with prospective business advantage and also for breach of contract. The two claims were tried together. The lower court entered judgment directing a verdict against the plaintiff on the tort claim and in favor of the plaintiff on the contract action. The court ordered that only nominal damages be awarded for breach of contract. The plaintiff appealed, challenging the directed verdict against him on the tort claim and also the award of nominal damages.

Edwards' suit for intentional interference with prospective business advantage is based upon the following facts. In 1971, he entered into negotiations with Continental Oil Company, Conoco, for possible purchase by Conoco of his mining claims. After slightly more than five months of negotiations, Conoco informed Mr. Edwards that it was no longer interested in his property. Edwards then brought suit against Anaconda alleging that Anaconda's intentional interference was the proximate cause of Conoco's loss of interest.

The breach of contract claim arises out of an option agreement entered into between Anaconda and Edwards on February 12, 1965. Under this agreement, Anaconda was allowed to explore Mr. Edwards' property and, upon termination of the agreement, Anaconda was to give Mr. Edwards all geological and geophysical information which Anaconda had obtained concerning the property. Anaconda decided to terminate its option in April 1966 but, despite requests, failed to release all of the data it had obtained. Mr. Edwards' suit for breach of contract is based upon this refusal.

We affirm the trial court's direction of a verdict in favor of appellee on the issue of whether a tort was committed. For the purposes of reviewing the directed verdict, we are required to accept as true all competent evidence introduced by the appellant and any reasonable inferences therefrom. *Tanner v. Levie,* 105 Ariz. 149, 460 P.2d 995 (1969). Having done so, we must conclude that although appellant's evidence establishes a prima facie case of intentional in-

terference with a prospective or continuing business relation, it also establishes that appellee's actions were privileged. Appellee therefore is not liable for the interference.

■ Arizona recognizes the tort of intentional interference with business expectancies. *Pre-Fit Door, Inc. v. Dor-Ways, Inc.,* 13 Ariz.App. 438, 477 P.2d 557 (1970). This tort is defined in Restatement of Torts, § 766, as follows:

"Except as stated in Section 698 [betrothal promises], one who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . enter into or continue a business relation with another is liable to the other for the harm caused thereby."

It is not necessary for there to have been an existing business relation, since there could be a tortious interference if Mr. Edwards was about to enter into such a relation but had not done so. There was evidence from which a jury could have found the existence of a business expectancy between Edwards and Conoco.

■ The language "induces or otherwise purposely causes" clearly indicates intent is an essential element of this tort. Appellant presented evidence which raised a jury question regarding intent to interfere. He argues that Anaconda's intent to interfere is shown by its acts in maintaining mining claims which overlapped those of appellant. The act of maintaining overlapping claims does not, in itself, indicate an intent to interfere. Junior claims may be located so as to overlap the boundaries of a senior location. This is justifiable where the junior locator cannot determine the validity of the underlying claims. 1 American Law of Mining, § 5.19. Since appellant's claims are unpatented, Anaconda's maintenance of overlapping claims could be legitimate under this rationale. Appellant admitted at trial that "overlapping is exceedingly common. It does not automatically present a conflict." There was testimony at trial, however, from which the jury could have inferred an intent to interfere. Edwards testified that in January 1965, an Anaconda representative assured him that Anaconda did not really want the conflicting claims and that "they recognized my superior possessory rights . . . so don't worry . . ."

■ Comment e, Restatement of Torts, § 766, states that "To be subject to liability under the rule stated in this Section, the actor must have knowledge of the business expectancy with which he is interfering." Appellant was not required to show that Anaconda had specific knowledge of the relation between him and Conoco so long as Anaconda knew that appellant had a business expectancy in that he would be continually attempting to negotiate with other companies. There are many cases in which tortious interference was found to exist because the defendant drove away plaintiff's customers or other persons with whom he wished to deal. The defendant's intent in these cases was not directed at the plaintiff's relation with any particular customer or person but rather was an intent to keep away all who might otherwise deal with the plaintiff. *King v. City of Seattle,* 84 Wash.2d 239, 525 P.2d 228, 230 (1974); *Graham v. St. Charles St. R. Co.,* 47 La.Ann. 214, 16 So. 806 (1895); *Tuttle v. Buck,* 107 Minn. 145, 119 N.W. 946 (1909); *Boggs v. Duncan-Schell Furniture Co.,* 163 Iowa 106, 143 N.W. 482 (1913). The comments to Restatement of Torts, § 768, which relate to competitor's privilege as a defense, impliedly support this interpretation of the knowledge requirement in cases where the interference is with a general business expectancy. Comment d gives the following example:

"A and B are competing distributors of shoes. A induces prospective customers of B not to purchase from him. A is privileged under the conditions stated in this Section."

The example given in comment e similarly indicates that the knowledge requirement of the restatement is knowledge of the general expectancy.

"A operates a large manufacturing plant in a small town. He also operates there a general store in which he sells goods at

retail. B operates a store in the same town. A instructs the employees in his plant that they must patronize only his store and that if they should be found patronizing B's store, they will be instantly discharged. The Institute takes no position as to whether A is privileged under the rule stated in this Section."

Prosser recognizes that one of the business expectancies covered by the tort is "the opportunity of obtaining customers." The loss resulting from interference with this expectancy can be measured by looking to "a background of business experience" rather than a particular relationship. W. Prosser, Handbook of the Law of Torts, § 130, p. 950 (4th ed. 1971). This indicates that intent to interfere with a single specific relationship is not required. In addition, Prosser indicates that the tort of interference with prospective advantage began with "cases having to do with the use of physical violence, or threats of it, to drive away customers from the plaintiff's market, or those who might make donations to his church . . ." Prosser, supra, § 130, at 949.

Anaconda would have known that the property was likely to interest large mining companies because Anaconda itself had previously negotiated with Edwards and explored the property. Furthermore, there was testimony at trial indicating that the property was of sufficient size to interest a mining company. In fact, there is evidence that other companies were interested because, from 1966–1969, Mr. Edwards negotiated with several mining companies. The conflicting claims were maintained by Anaconda for about seven years before Conoco entered the picture. Although there is nothing in the act of maintaining conflicting claims throughout prior years that indicates any intent to interfere with Edwards' particular negotiations with Conoco in 1971, the jury could have inferred that Anaconda intended to obstruct Edwards' negotiations with any other company in the future. An issue of fact as to causation is raised because the uncertainty of title could have caused Conoco to withdraw from negotiations with Mr. Edwards.

Appellant argues that certain testimony was wrongfully excluded by the trial court and claims this was error. We find it unnecessary to determine whether the exclusion was proper, since, as we have noted, appellant's evidence shows the existence of intentional interference even without considering the excluded evidence. Furthermore, the excluded evidence does not relate to the issue of privilege, which we consider dispositive of the case.

■ Despite the indications of intentional interference, Anaconda cannot be liable in tort. It escapes liability because its actions were privileged. Anaconda and Edwards were competitors as to the minerals in these unpatented claims. Anaconda had a strong interest in the area, as evidenced by the fact that it had rights in every piece of property around Edwards' claims.

The Restatement of Torts § 768 recognizes the privilege of competitors as follows:

"(1) One is privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor if

(a) the relation concerns a matter involved in the competition between the actor and the competitor, and

(b) the actor does not employ improper means, and

(c) the actor does not intend thereby to create or continue an illegal restraint of competition, and

(d) the actor's purpose is at least in part to advance his interest in his competition with the other."

This competitor's privilege does not apply to inducement of breach of contract but only to interference with business expectancies. Restatement, supra. This court recently applied the competitor's privilege to defeat liability for interference with a business expectancy. *Ulan v. Vend-A-Coin*, 27 Ariz. App. 713, 558 P.2d 741 (filed November 3, 1976). We find that the evidence presented in the instant case mandates the same conclusion. Since the privilege does not extend to "improper means" of interference, we

must scrutinize appellant's argument that Anaconda was maintaining invalid claims.

 Appellant argues that Anaconda's claims were invalid because "junior claims do *not* accede to title upon the failure of superior claims, but instead are totally invalid unless themselves relocated *after* the lapse of the superior claims." Appellant's contention that Anaconda's claims are invalid rests upon the following facts. Mr. Edwards' claims had been allowed to lapse by one of his temporary assignees. Edwards subsequently relocated his claims. Anaconda did not relocate its claims. Appellant argues that this failure to relocate rendered Anaconda's claims invalid. The authority cited by appellant, however, does not support this proposition. Instead, the text cited, 2 American Law of Mining, § 8.24, indicates that Anaconda needed to relocate its junior claims only if there was forfeiture or abandonment of Edwards' claims. Mere failure to do assessment work does not cause abandonment or forfeiture, but merely renders the claims subject to relocation at any time prior to resumption of the assessment work by the owner of the superior claims. *Whitwell v. Goodsell,* 37 Ariz. 451, 295 P. 318 (1931). For definitions of forfeiture and abandonment, see §§ 8.1 and 8.9.

 Since appellee was simply trying to obtain an interest in minerals underlying the disputed area in a manner that was not unlawful, its actions in maintaining the overlapping claims were privileged and no tort liability can attach. The trial court was therefore correct in directing a verdict on the tort claim.

 Edwards also complains of the award of only nominal damages when he prevailed on his breach of contract claim. Anaconda's breach of its 1966 contract with Edwards consisted of its failure to deliver to Edwards all of the data it contracted to provide. Appellant's expert witness, geophysicist William Gordon Wieduwilt, testified that, without the omitted geological and geophysical data, the geophysical aspects of the Edwards property could not be interpreted. Edwards' damages due to his loss of use of the data from the time of breach to the present were indefinite and cannot be estimated accurately. The award of nominal damages was thus correct on this point. 22 Am.Jur.2d Damages, § 50, p. 79. Edwards also contends that he could not obtain the benefit of his bargain unless all the geological and geophysical testing he contracted for was done again. There was expert testimony that redoing the testing would have cost $500 per line mile per day at the time of the breach. Anaconda's expert indicated that the tests it had performed had cost $12,425. There is no need to have this testing redone, however, since Edwards has now been supplied with all of the missing information. We find therefore that appellant failed to establish a prima facie case for an award of substantial damages and the trial court's award of nominal damages was correct.

Affirmed.

HOWARD, C. J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge JAMES L. RICHMOND having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.