[No. 45155. En Banc. October 12, 1978.]

WILMER E. HENDERSON, *Respondent*, v. TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS UNION, LOCAL 313, ET AL, *Appellants.*

*Vance, Davies, Roberts, Reid & Anderson,* by *George H. Davies* and *Herman L. Wacker, Geoffrey Cross,* and *Hoff & Cross,* for appellants.

*James M. Caraher,* for respondent.

STAFFORD, J.—Teamsters Union Local 313 and three of its officers appeal a jury verdict for defamation. We reverse and remand for a new trial.

Plaintiff Wilmer Henderson joined defendant Teamsters Local 313 in 1948. In 1970, he was appointed to fill an unexpired term as defendant Local's recording secretary. At that time he had been employed for 10 years as a union driver for Liquid Air.

Plaintiff sought election when his term as recording secretary expired in December 1971. Two slates of candidates emerged. Plaintiff was associated with the Henderson–Wakeman slate, which was opposed by the Munce–Scalf slate. The Munce–Scalf slate included candidates Ronald Munce, Alex Munce, Paul Scalf and Jim Potter (defendants).

The Munce–Scalf slate was elected and took office in January 1972. By this time plaintiff was no longer

employed by Liquid Air and primarily obtained employment through referrals from defendant Local's hiring hall.

Following his defeat, plaintiff began experiencing difficulty obtaining employment referrals from the hiring hall. In 1973, plaintiff learned defendant union officers Alex Munce, Ronald Munce, Scalf and Potter were engaged in a scheme to eliminate him from the Teamsters craft. The scheme included individual contact with plaintiff's employers by these union officers. They informed the employers that plaintiff was a "troublemaker." Two primary reasons appeared for so labeling him. First, while employed by Liquid Air he had repeatedly challenged its safety practices. Second, he was actively engaged in questioning Local 313's accounting practices.

Upon learning of the defendants' scheme, plaintiff filed an unfair labor practice charge with the National Labor Relations Board. The charge was informally settled without resolving whether defendant Local 313 had in fact coerced plaintiff's employers or discriminated against him in violation of 29 U.S.C. §§ 158(b)(1)(A) and 158(b)(2). However, pursuant to the settlement, Local 313 agreed to refrain from causing or attempting to cause plaintiff's employers to discharge or discriminate against him.

The settlement was made without prejudice to plaintiff's right to seek damages in a court of law. Thereafter, he filed this action against Alex Munce, Paul Scalf, and Ronald Munce in their individual capacities and as agents of Local 313. His complaint alleged:

> That on many occasions the individual defendants have made derogatory statements to prospective employers as regards plaintiff's work habits, abilities, general reputation in the community, and past activities while in Union management. That all of said statements are libelous, slanderous and were uttered maliciously, with intent to deprive plaintiff of his constitutional rights and his ability to earn a living for himself and his family . . .

Prior to trial, defendants brought a motion in limine to exclude any evidence that (1) Local 313 was in trusteeship;

(2) the local had embezzled funds; (3) the individual defendants had secretly agreed to trade elective positions after the election; (4) a disbarred attorney had counselled the local; and (5) the fact that there had been a settlement of an NLRB grievance lodged by plaintiff. The trial court denied defendants' motion, ruling that they could object if plaintiff sought to introduce the challenged evidence. During the trial the evidence was admitted.

The matter proceeded to trial without defendants challenging the trial court's jurisdiction over the subject matter. At trial, the defendants denied making the defamatory statements and alternatively argued that if they were made the statements were true or were subject to a qualified privilege.

The jury returned a verdict for plaintiff and against all defendants and judgment was entered thereon. Defendants appealed to the Court of Appeals which certified the matter to this court.

Defendants assign error to the trial court: (1) having assumed subject matter jurisdiction; (2) having refused to give defendants' qualified privilege instructions; (3) having given a damage instruction which allowed lost earnings without sufficient proof of loss; and (4) having committed several evidentiary errors said to have deprived them of a fair trial. We consider only the first two assignments of error. Since a new trial is required, nothing will be gained by discussing the remaining assignments of error because all may be cured on retrial.

During the trial it developed that plaintiff's claim for defamation involved conduct that could arguably be an unfair labor practice. *See* 29 U.S.C. §§ 158(b)(1)(A) and 158(b)(2). Thus, the threshold question is whether the National Labor Relations Act (29 U.S.C § 141 *et seq.*) preempts jurisdiction over plaintiff's claim for defamation in state court.

State defamation actions are not per se preempted by the National Labor Relations Act. *See Linn v. Plant Guard Workers, Local 114,* 383 U.S. 53, 63, 15 L. Ed. 2d

582, 86 S. Ct. 657 (1966); *see also Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 56 L. Ed. 2d 209, 98 S. Ct. 1745 (1978). However, if a defamation action involves conduct which is arguably an unfair labor practice as well, a state court may assume jurisdiction only in "those instances in which the complainant can show that the defamatory statements were circulated with malice and caused him damage." *Linn v. Plant Guard Workers, Local 114, supra* at 65. *See also Farmer v. Carpenters & Joiners, Local 25,* 430 U.S. 290, 51 L. Ed. 2d 338, 97 S. Ct. 1056 (1977). Thus, the existence of malice is jurisdictional and must be established to avoid federal preemption. The federal test for "malice" is found in *Linn* at page 65:

> The standards enunciated in *New York Times Co. v. Sullivan,* 376 U. S. 254 (1964), are adopted by analogy, rather than under constitutional compulsion. We apply the malice test to effectuate the statutory design with respect to pre–emption. Construing the Act to permit recovery of damages in a state cause of action only for defamatory statements *published with knowledge of their falsity or with reckless disregard of whether they were true or false* guards against abuse of libel actions and unwarranted intrusion upon free discussion envisioned by the Act.

(Italics ours.) *Accord, Farmer v. Carpenters & Joiners, Local 25, supra* at 299.

Recently, in *Farmer* the United States Supreme Court imposed additional restrictions upon a state court's exercise of jurisdiction in actions arguably involving employment discrimination under the act. The court said at page 305:

> Union discrimination in employment opportunities cannot itself form the underlying "outrageous" conduct on which the state court tort action is based; to hold otherwise would undermine the pre–emption principle. Nor can threats of such discrimination suffice to sustain state court jurisdiction. . . . Simply stated, *it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or*

*threatened rather than a function of the actual or threatened discrimination itself.*

(Italics ours.) At footnote 13, page 305, the court explained further:

In view of the potential for interference with the federal scheme of regulation, the trial court should be sensitive to the need to minimize the jury's exposure to evidence of employment discrimination in cases of this sort. *Where evidence of discrimination is necessary to establish the context in which the state claim arose, the trial court should instruct the jury that the fact of employment discrimination (as distinguished from attendant tortious conduct under state law) should not enter into the determination of liability or damages.*

(Italics ours.)

Consequently, we hold that state courts may assume jurisdiction over defamation actions, such as plaintiff's, only under limited circumstances. First, malice must be established. Second, the state tort must be either unrelated to employment discrimination regulated by the federal act or a function of the particularly abusive manner in which the discrimination occurs rather than a function of the actual or threatened discrimination itself. Finally, if evidence of employment discrimination is necessary to establish the context in which the tort claim arises, the jury must be instructed to separate the evidence of employment discrimination from the issues of tort liability and tort damages.

In the instant case the jury was not instructed that it must find malice as a prerequisite to recovery. Moreover, the jury was not instructed to separate the evidence of possible employment discrimination from the issues of tort liability and tort damages. These deficiencies constitute reversible error.

Since the case must be retried, we also consider defendants' claim of qualified privilege. Defendants contend the discussions *between or among union members,* concerning plaintiff, were qualifiedly privileged as publications between persons "sharing a common interest." They also

maintain that the statements made *to plaintiff's employers* were qualifiedly privileged because they were made for the protection of a "third person," *i.e.*, the employer. We shall consider each argument separately.

First, the common interest of labor union members will support the privilege of communications among themselves, concerning the qualifications of officers and members as well as their participation in the activities of the association. *Ward v. Painters' Local 300,* 41 Wn.2d 859, 865–66, 252 P.2d 253 (1953). *See also Pate v. Tyee Motor Inn, Inc.,* 77 Wn.2d 819, 467 P.2d 301 (1970).

Without question the record contains several *potentially* privileged communications between or among union members concerning plaintiff's complaints about the union's management of funds. But, whether *these* statements were qualifiedly privileged is irrelevant. Plaintiff's claim was not premised upon statements made between or among union members. It was premised upon statements made by defendants *to plaintiff's employers.* Even if the jury had found that the statements between or among the union members were qualifiedly privileged, defendants would not have been relieved of liability for publication of the statements to plaintiff's employers. Accordingly, the trial court properly refused to give defendants' instruction on qualified privilege. Insofar as the requested instruction dealt with statements made between union members the instruction was totally irrelevant.

Finally, where the communication is prompted by a duty to a third person, it may be qualifiedly privileged. *Ecuyer v. New York Life Ins. Co.,* 101 Wash. 247, 256, 172 P.2d 359 (1918). However, one may not voluntarily intermeddle in the affairs of another by *volunteering* unsolicited information merely because he believes the third person would ask for it if he knew the information was available. *See Russell v. American Guild of Variety Artists,* 53 Haw. 456, 497 P.2d 40 (1972); *Zeinfeld v. Hayes Freight Lines, Inc.,* 41 Ill. 2d 345, 243 N.E.2d 217 (1968); *Stevenson v.*

*Baltimore Baseball Club, Inc.,* 250 Md. 482, 243 A.2d 533 (1968). *See also* Restatement (Second) of Torts § 595, comment *j* (1968).

In the instant case there is no evidence to indicate that any of plaintiff's employers requested information concerning his work performance. On the contrary, all communications concerning plaintiff were *initiated by defendants.* Further, each employer was then pleased with plaintiff's work performance. There being no evidence suggesting that the employers requested the information and there being no evidence to support any belief that the employers would ask for the information if they had known it was available, the trial court correctly refused to give a qualified privilege instruction based upon statements volunteered by defendants to plaintiff's employers.

The trial court is reversed and the cause remanded for a new trial in accordance with this opinion.

WRIGHT, C.J., and ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.