
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT J DIEDERICH, individually, | No. 13-35494 |
| Plaintiff - Appellant, | D.C. No. 2:10-cv-01558-RAJ |
| v. | |
| PROVIDENCE HEALTH & SERVICES, a Washington corporation, DBA Providence Health & Services-Washington, DBA Providence St. Peter Hospital; et al., | MEMORANDUM* |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted May 4, 2015
Seattle, Washington

Before: KLEINFELD, GOULD, and CHRISTEN, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Dr. Robert Diederich appeals from the district court's orders granting summary judgment on his retaliation claim, limiting the potential damages on his breach of contract claim, and dismissing his wrongful termination and tortious interference claims against his former residency program at Providence Hospital.[1] We have jurisdiction under 28 U.S.C. § 1291. We reverse in part the district court's summary judgment order on Diederich's state retaliation claim, dismiss Diederich's contract-damages appeal as moot, and affirm the district court's dismissal of Diederich's wrongful termination and tortious interference claims.

1.      Viewing the evidence in the light most favorable to Diederich, *see Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1045 (9th Cir. 2014), we conclude that Diederich presented sufficient evidence to establish a prima facie claim that Providence retaliated against him based on his lawsuit against his former employer and residency program director. Sometime in December 2007, the director of Providence's family practice residency program told Diederich, "I learned all about you," and sometime shortly after that, he told Diederich, "I spoke with Sam Cullison." The evidence in the record shows that a series of adverse actions against Diederich began in January 2008, culminating in his termination in September 2008. Diederich's termination letter stated three specific reasons for his

---

[1]      The parties are familiar with the facts, so we do not recount them here.

termination. The appeals board upheld Diederich's termination by a four to one vote, but it did not rely on the grounds cited in the termination letter. Instead, it cited concerns regarding Diederich's professionalism and performance over the nine months leading up to the termination. Considering the timing of the director's comments and the beginning of the disciplinary actions against Diederich, along with the appeals board's apparent departure from or possibly summary statement of the stated basis for Diederich's termination, a rational factfinder could infer, for purposes of a prima facie case, that Diederich's superiors at Providence learned of his prior lawsuit and retaliated against him on that basis. A genuine issue of material fact exists on this issue pertinent to this retaliation claim, but that does not necessarily resolve the *McDonnell-Douglas* analysis. *See Tyner v. State*, 154 P.3d 920, 928 (Wash. Ct. App. 2007) (applying *McDonnell-Douglas* burden-shifting framework to Washington Law Against Discrimination (WLAD) retaliation claim).

2.     The district court did not consider whether Providence stated a legitimate nondiscriminatory reason for disciplining, and ultimately terminating, Diederich. In fact, the district court denied Providence's motion to supplement the record with evidence showing it lacked knowledge that Diederich sued his former residency program and its director, and that it was "not motivated by discriminatory animus." Because this issue was not decided by the district court and may require evaluation

of additional evidence, we decline to consider it on appeal. *See U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1021 (9th Cir. 2012) (remanding for the district court to examine in the first instance issues not previously reached that may require factual development).

3.      Diederich also argues that Providence retaliated against him for leaving work while sick and for requesting vacation time. But it is clear from the record that Diederich was disciplined for leaving the hospital without adequately notifying his attending physician and without following protocols for ensuring that another doctor would be attending to his patients, not for choosing to go home when he was sick. Diederich's vacation request claim fails because his requesting vacation time is not a "protected activity" under the WLAD. *See* Wash. Rev. Code § 49.60.210.

4.      Diederich forfeited his breach of contract claim by voluntarily dismissing it with prejudice in the district court. *See Concha v. London*, 62 F.3d 1493, 1507–08 (9th Cir. 1995). Thus, we dismiss as moot his appeal of the district court's limitation of contract damages.

5.      The district court correctly concluded that Diederich could not base his common law wrongful termination claim on violations of the WLAD. *See Bennett v. Hardy*, 784 P.2d 1258, 1263 (Wash. 1990) (rejecting wrongful discharge tort

4

claims that were encompassed by statutory claims).  But we disagree with the district court's conclusion that Diederich failed to identify a relevant public policy outside of the WLAD.  *See Cudney v. ALSCO, Inc.*, 259 P.3d 244, 246 (Wash. 2011) (stating that the first element of a wrongful termination claim is "the existence of a clear public policy").  Washington Revised Code § 18.130.180(15), which addresses "engaging in a profession involving contact with the public while suffering from a contagious or infectious disease involving serious risk to public health," evidences such a policy.  We nevertheless affirm the district court's dismissal of Diederich's wrongful termination claim because Diederich failed to establish a causal connection between his taking sick leave and any adverse employment action.  *See Cudney*, 259 P.3d at 246.  He was disciplined for failing to properly notify his supervisors and hand off his patients.  Diederich asserts no basis for a public policy protecting an employee's choice to leave work without ensuring critical work will be handled by someone else.

6.    We agree with the district court that Diederich failed to allege facts that could establish the existence of a valid business expectancy.  *Sea-Pac Co. v. United Food & Commercial Workers Local Union 44*, 699 P.2d 217, 220 (Wash. 1985) ("The plaintiff must show that the future opportunities and profits are a reasonable expectation and not based on merely wishful thinking." (citing *Caruso*

5

*v. Local 690, Int'l Bhd. of Teamsters*, 653 P.2d 638 (Wash. Ct. App. 1982))).  First, Providence made no promise that Diederich would be entitled to complete his residency.  Diederich was working under a one-year contract as a second-year resident, with no promise that he would be permitted to complete the program if his performance fell below par.  Second, Diederich does not show that he had any specific business expectancy post-residency.

Each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and DISMISSED in part.**